The Supreme Court has recognized an agency's obligation to prepare a post-decision supplemental EIS when a project has not been fully constructed or completed. Marsh v. Oregon Natural Res. Council , 490 U.S. 360, 367-72, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). The Supreme Court determined that "NEPA does require that agencies take a 'hard look' at the environmental effects of their planned action, even after a proposal has received initial approval." Id. at 374, 109 S.Ct. 1851. Marsh stands in contrast to Norton v. S. Utah Wilderness Alliance , 542 U.S. 55, 72, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) ("SUWA"). The Supreme Court in SUWA determined that the approval of a land use plan constituted a major federal action that required an EIS. Id. The major federal action remained complete, however, when the plan was approved. Id.
The Ninth Circuit addressed the distinction between Marsh and SUWA in Cold Mountain v. Garber , 375 F.3d 884 (9th Cir. 2004). The Forest Service issued a special use permit to the Montana Department of Livestock to operate a bison capture facility. Environmental groups alleged that the special use permit violated NEPA
*1123 as new information emerged after the Forest Service had issued the special use permit. Id. at 891-92. The Ninth Circuit determined that the Forest Service possessed no ongoing oversight or involvement of the special use permit after its issuance. Id. at 894. There existed no ongoing major federal action. Id.
This case proves more akin to Marsh . Federal Defendants still retain a meaningful opportunity to evaluate the Mainline Alternative route. The Mainline Alternative route differs from the route analyzed in the EIS. The Mainline Alternative route crosses five different counties. The Mainline Alternative route crosses different water bodies. The Mainline Alternative route would be longer. The Mainline Alternative route would require an additional pump station and accompanying power line infrastructure. Federal Defendants cannot escape their responsibility under NEPA to evaluate the Mainline Alternative route. Federal Defendants first argued that it was too early to evaluate the Mainline Alternative route before the approval of the Presidential Permit. They now argue that it remains too late to evaluate the Mainline Alternative route. NEPA requires a hard look. Marsh , 490 U.S. at 367-72, 109 S.Ct. 1851.
The Court further agrees that Federal Defendants must address the Mainline Alternative route as it proves to be a "connected action" to the proposed action. Similar to Thomas , the Mainline Alternative route represents an interdependent part of the larger action of Keystone. Thomas, 753 F.2d at 759. The entire pipeline remains interrelated and requires one EIS to understand the functioning of the entire unit. Unlike Salazar , ongoing federal agency action remains. Salazar , 706 F.3d at 1095.
Federal Defendants have yet to analyze the Mainline Alternative route. Federal Defendants possess the obligation to analyze new information relevant to the environmental impacts of its decision. Other courts have recognized this obligation. See Sierra Club v. Bosworth , 465 F.Supp.2d 931, 939 (N.D. Cal. 2006). In Bosworth , the court required a post-decision supplemental EIS for a timber harvesting project where the project had not been completed. Id. Federal Defendants' failure to supplement the 2014 EIS likewise violates its obligations under NEPA. Thomas, 753 F.2d at 759 ; Bosworth , 465 F.Supp.2d at 939.
Plaintiffs further argue that Federal Defendants possessed the obligation to analyze Keystone under the ESA. (Doc. 140 at 17.) The ESA requires agencies to analyze the site-specific impacts of proposed actions. Under Section 7 of the ESA, all federal "action agencies" must, "in consultation with" the Fish Wildlife and Service, "insure" that the actions that they fund, authorize, or undertake are "not likely to jeopardize the continued existence of any endangered species or threatened species" or "result in the destruction or adverse modification" of critical habitat. 16 U.S.C. § 1536(a)(2). The ESA requires agencies to evaluate which species or critical habitats are present in the "action area," which includes "all areas to be affected directly or indirectly by the Federal action." 50 C.F.R. §§ 402.02, 402.12(a). The Court will address the ESA argument in a future Order.
CONCLUSION AND ORDER
1. Accordingly, IT IS ORDERED that Federal Defendants must supplement the 2014 final supplemental EIS to consider the Mainline Alternative route as approved by the Nebraska PSC.
2. The Court declines to vacate the Presidential Permit at this time. TransCanada has represented to the *1124 Court that construction of the pipeline will not begin until the second quarter of 2019. The Court directs Federal Defendants to file a proposed schedule to supplement the EIS in a manner that allows appropriate review before TransCanada's planned construction activities.
3. The Court will consider further remedies if circumstances change that do not allow review of the supplemental EIS before TransCanada's planned construction activities.